### JOHN M. SCOTT & another *vs.* WILLIAM McKINNEY.

To prove joint ownership by two persons of goods bid off at auction by one of them in his own name, evidence is competent of their agreement prior to the sale to buy the goods on joint account, without first proving what were the terms of the sale.

Under an agreement of S. with M. for a purchase of goods on account of S. & Co. and M. jointly, S. & Co. have a joint interest with M. in goods bought in pursuance thereof, although at the time of such agreement S. did not disclose the name of his partner in the firm.

The release by each of two parties, who were joint owners of goods sold to a third, of all claim for more than one half of the price stipulated to be paid by him therefor, is a sufficient consideration for his agreement to sever the payment.

If A. and B. agree to buy jointly certain goods at auction, and B. bids them off in his individual name, and by the terms of the sale a certain time is allowed for payment, and A. neglects to contribute his share of the purchase money within that time, but does afterwards pay it to B., who meanwhile has contracted to sell the goods to C., and B., after receiving such contribution from A., pays the purchase money to the auctioneer and receives the goods, and then delivers them to C., A. is jointly interested with B. in the price to be paid by C. for the goods; and, in an action by A. against C. for one half of such price on a subsequent contract by C. for a severance of the payment, the receipt given by B. to A. for his share of the purchase money, and a notice of his joint ownership served by A. on C. after the delivery of the goods to C., are admissible in evidence.

CONTRACT by John M. Scott and Robert Wright, partners under the firm of Scott & Co., cotton brokers at Boston, to recover part of the price of certain cotton sold to the defendant.

At the trial in the superior court, before *Russell*, J., the plaintiffs introduced evidence tending to show that John M. Scott and Terence Flynn, at an auction room in New York, agreed to purchase on joint account a lot of cotton which was advertised to be sold there on that day by the United States, and in pursuance of this agreement Flynn in Scott's presence bid off one hundred and nineteen bales of the cotton, giving to the auctioneer his own name as purchaser. To this evidence the defendant objected; but it was admitted *de bene*. The plaintiffs' evidence tended further to show that by the terms of the sale three days were allowed within which to pay for the cotton; that, with an understanding that it should be at once disposed of, so as to raise the money necessary to pay for it, Scott, taking samples of it, on the day of the sale, left New York for Boston where he offered it in the market; that, " soon after " this, Flynn

advised the plaintiffs that he had disposed of it in New York, and asked them to bring on their share of the money to pay to the United States; that, the next day, the plaintiffs went to New York and there paid to Flynn one half of the price for which the cotton was bid off at the auction, he signing and delivering to them the following receipt, " New York, Oct. 25, 1865. Received from Scott & Co. ten thousand seven hundred and fifty-five $\frac{52}{100}$ as half payment for 119 bales cotton bo't at Government sale Oct. 1865, lot x, Terence Flynn, and sold to Wm. McKinney at fifty-four c.;" that then Flynn informed them that he had sold the cotton to the defendant, who lived at Boston, and they returned to Boston, where, after the cotton had been delivered to the defendant, they gave him notice orally of their interest in it, and that they should require him to pay to them one half of the price of it, and soon afterwards served on him a written notice and demand to that effect. The defendant objected to the admission of this written notice and demand; but the judge overruled the objection. And the plaintiffs' evidence tended further to show that, a few days after this demand, Flynn came to Boston, and held an interview with the defendant and the plaintiffs, at which it was " agreed by all said parties" that the defendant should then pay to the plaintiffs a sum equal to the amount paid by the plaintiffs towards the purchase of the cotton at the auction, and should pay to them the balance of their share of the price at which he had bought the cotton as soon as he should settle with certain parties to whom he had sold it; that the defendant thereupon paid to the plaintiffs ten thousand seven hundred and fifty-five dollars; and that shortly afterwards the plaintiffs demanded of the defendant ·the remainder of their share of the price due from him, but he declined to pay it, giving as his reason that in New York, a few days before, he had paid to Flynn the whole of the balance of the price due from him, under a threat by Flynn that he would cause him to be arrested if he should not do so.

John M. Scott was a witness, and, on cross-examination, tes tified that at the auction " the terms of sale were read by the auctioneer before the sale commenced; that he did not see

Flynn sign any agreement at the time the cotton was knocked off to him, and did not know of his taking or having a bill of sale of the cotton; that the parties were each to pay one half the purchase money for the cotton, and were to conform to the terms of sale stated in the printed advertisement." The defendant thereupon asked the judge to rule that the evidence admitted *de bene* should be excluded; but he declined so to rule.

There was further evidence which the plaintiffs contended had a tendency to show that, at the time when the plaintiffs paid to Flynn their share of the purchase money, nothing had been paid to the United States; and that, after that time, Flynn paid the purchase money and received the cotton.

The defendant introduced evidence tending to show that there was never any agreement between the plaintiffs and Flynn for a joint interest in the cotton; and that, if ever there was such an agreement, the plaintiffs had forfeited their rights under it by failing to furnish seasonably their share of the purchase money.

The defendant asked the judge to instruct the jury that, if they should believe that the sale by the United States was made to Flynn, and the contract, if any, between Flynn and Scott was that Scott should have a joint interest in the cotton on payment of half of the purchase money, and Flynn sold the cotton to the defendant before he received such payment from Scott, there was no such joint ownership at the time of the sale as would enable the plaintiffs to maintain their action. But the judge, in giving this instruction, qualified it by adding the words, " unless Flynn waived the objection; but, if Flynn waived the objection that the plaintiffs had not complied with the terms of the sale, then it would become joint property; and so it would be if they paid it before property passed from the United States."

The defendant asked the judge further to instruct the jury that they must be satisfied that the agreement, if any, between Scott and Flynn at the auction, was made by Scott on account of his partner as well as himself; and that Flynn entered into it with the understanding that he was dealing with Scott & Co. and not with Scott alone. The judge adopted and gave the first part of this instruction; but declined to give the second

part, and instructed them, instead, that, if Scott was acting for the firm, and made the agreement in their behalf, that would be sufficient, though he did not at the time disclose the name of Wright as his partner.

Another instruction requested by the defendant was, that, if the jury should believe that by the terms of the contract, if any, between Flynn and Scott, it was understood that " the payment " was to be made within three days, and Scott did not furnish the money within three days, Flynn had a right to sell the cotton as his own, and, if he did so sell it, the defendant was not indebted to the plaintiffs or either of them on account of his purchase. But the judge, in giving this instruction, qualified it by adding that, if Flynn waived this objection and his right, by receiving payment from Scott & Co. later than three days after the auction, and then sold the cotton to the defendant on joint account, there was a joint indebtedness on the part of the defendant.

The defendant further asked the judge for an instruction to the jury, " that, in order to prove a sufficient consideration for the alleged promise of the defendant to pay Scott & Co. one half the profits, the plaintiffs must prove that Flynn absolutely and unconditionally released the defendant from all obligation to pay that sum to him, and that Flynn and Scott & Co. similarly released all obligation on the part of the defendant to pay them jointly ; " which instruction the judge gave, but added to it, " that, if the defendant owed the plaintiffs one half and Flynn one half, and the plaintiffs released the defendant from one half, and Flynn released the defendant from one half, and Flynn and the plaintiffs released the defendant from his obligation to pay them jointly, that would be a consideration sufficient for the agreement declared upon."

The jury returned a verdict for the plaintiffs ; and the defendant alleged exceptions.

*W. W. Warren,* for the defendant.

*N. Morse,* for the plaintiffs, was stopped by the court.

CHAPMAN, J. Under the rulings of the presiding judge, the jury must have found that the plaintiffs were joint purchasers of

the cotton with Flynn, and that, if their interest depended upon their payment of half the purchase money, they either paid it according to their agreement, or, if they did not pay it seasonably, Flynn waived his rights in that respect; that they were joint owners at the time of the sale, and that it was sold to the defendants on joint account; that the defendant was notified of the plaintiffs' interest in the property, and by consent of Flynn agreed to pay one half of the price to the plaintiffs, and the other half to Flynn.

Upon these facts the plaintiffs were entitled to recover. The evidence which was admitted *de bene* was competent. If Flynn made the purchase in his own name, still the plaintiffs might prove that it was on joint account; and, if he sold it in his own name, they might show that he acted for them as well as for himself. The notice which they gave to the defendant of their interest was properly received in evidence; and it was proper that the court should look beyond the forms of the transaction to its substance. The rulings were all correct.

The release of the plaintiffs and Flynn respectively to all claim for more than one half the price was a sufficient consideration for the agreement of the defendant to sever the payment, and the contract of severance was valid. *Hall* v. *Leigh*, 8 Cranch, 50

*Exceptions overruled.*